(13 Misc. Rep. 727.)

### PEOPLE ex rel. CREEM v. PALMER.

(City Court of Brooklyn, Special Term. August, 1895.)

MUNICIPAL CORPORATIONS—CONTRACTS—MEANS TO PAY FOR WORK DONE.

Where the commissioner of city works has made the requisition on which the mayor, comptroller, and city clerk are required to borrow money on bonds of the city to pay for certain public improvements (Laws 1894, c. 379), the "means" to pay for such improvements are provided within Laws 1888, c. 583 (Brooklyn City Charter), tit. 18, § 3, providing that no contract shall be binding against the city unless the comptroller shall certify "that the means required to make the payments under such contract are provided and applicable thereto," and it is immaterial that the bonds have not been sold and the proceeds paid into the treasury.

Application by Daniel J. Creem for a writ of mandamus to compel George W. Palmer, as comptroller of the city of Brooklyn, to certify a contract between said city and relator. Granted.

Johnson & Lamb (Almet F. Jenks, of counsel), for relator.
Albert G. McDonald, for respondent.

CLEMENT, C. J. This is an application for a peremptory writ of mandamus to compel the comptroller to certify a contract made by the city of Brooklyn with the relator, pursuant to section 3 of title 18 of the Revised Charter (chapter 583, p. 1076, Laws 1888), which reads as follows:

"No contract or agreement for any purpose, involving the payment of any money, shall be valid and binding against said city, unless the comptroller shall certify or indorse on such contract or agreement that the means required to make the payments under such contract are provided and applicable thereto."

The contract has been executed in accordance with law, and only lacks the certificate of the comptroller to make it valid. The payments on such contract are to be made from the proceeds of bonds issued pursuant to chapter 379, Laws 1894. By that act (an amendment of the charter) the mayor, comptroller, and city clerk are required, on the requisition of the commissioner of city works, to borrow the necessary sums to meet the cost of construction of auxiliary sewers upon the bonds of the city. It now appears that the commissioner of city works has made a requisition for the issue of bonds to the amount of $250,000, but the comptroller declines to certify the contract until the bonds called for by the requisition are sold and the

proceeds paid into the treasury. Payments on the contract will not be required for a considerable time, and if the bonds are now sold the city will lose the interest during such time.

In interpreting a provision of a municipal charter, or of any statute, it is always important to trace its origin and history. By chapter 63 of the Laws of 1862 a board of contracts was established in this city, and by section 3 (page 200, Laws 1862) it was provided that:

"It shall not be lawful for the said board of contracts to enter into any contract or agreement, or to incur any liability on the part of the city, unless the money shall have been previously appropriated and raised therefor, and in the treasury, except for local improvements and for objects the expense of which is to be raised by local assessments."

By chapter 721 of the Laws of 1865 the board of contracts was abolished and the common council substituted in its place. In that act (section 8, page 1439) we find the following provision:

"No contract or agreement for any purpose, involving the payment of any money, shall be valid and binding as against said city, unless the comptroller shall certify or indorse on such contract or agreement that the moneys required to be paid on such contract are in the treasury and applicable to such payment, and in excess of such amount as may be required to pay existing or prior contracts."

In the charter of 1873 (Laws 1873, c. 863, tit. 17, § 3) the provision now in force was passed, and, in the revision of 1888, was re-enacted as a part thereof.

In construing a statute, next after its history, is to be considered its object. It was clearly the object of the legislature, in passing section 3 of title 18 of the charter, and prior similar laws, to prevent the making of contracts by the city unless the means of payment existed. In plain language, it was intended that the city should not contract a debt unless it could be paid when due. At first the law required that the money should actually be in the treasury, and that the comptroller should so certify. Subsequently the law was changed so as to read that the comptroller should only certify that the means required to make the payments were provided and applicable thereto. It is unnecessary to quote from the different dictionaries the definition of the word "means." Money in the treasury would be means required to make payments, but the word is not limited in its meaning to money on hand. To speak of a person as a man of means clearly does not signify that he only has money on deposit in bank. The change in the charter in 1873 was, in my opinion, made for the reason that the former provision was passed when payments on contracts were made from the annual taxes and local assessments. When laws were passed for great public improvements, which were paid for by the city at large and required the sale of bonds, the necessity was seen for the change. The alteration in this section was made for some purpose, according to a well-established rule of construction of statutes, and effect should be given to such purpose, if it can be discovered. Endl. Interp. St. § 382; Rich v. Keyser, 54 Pa. St. 86, 89; Ricket v. Railroad Co., L. R. 2 H. L. 175, 207; Lehman v. Robinson, 59 Ala. 219.

I hold that the present right to sell bonds comes within the language of the section in question, and that the means required to

make the payments on the contract with the relator are provided and applicable thereto, and the comptroller should so certify. The comptroller has acted in good faith in the matter, and was right in seeking a construction of the section by the courts.

Motion granted, without costs.